Page 1

```
 1              IN THE UNITED STATES DISTRICT COURT

 2                 FOR THE DISTRICT OF COLUMBIA

 3

 4   UNITED STATES OF AMERICA, .                    COPY

 5        Plaintiff,              .

 6            vs.                 .   Docket No. CR04-304 (RJL)

 7   KEVIN M. SALES,              .   Washington, D.C.

 8            Defendant.          .

 9                                .   December 1, 2004

10                                .   3:30 p.m.

11   . . . . . . . . . . . . .

12              TRANSCRIPT OF MOTION HEARING

             BEFORE THE HONORABLE RICHARD J. LEON

13               UNITED STATES DISTRICT JUDGE

14

15   APPEARANCES:

16

17   For the Plaintiff:        Trena Carrington, Esq.
                               Assistant United States Attorney
18                             United States Attorney's Office
                               555 4th Street, NW
19                             Washington, D.C. 20001
20   For the Defendant:        Danny C. Onorato, Esq.
                               Coburn & Schertler, LLP
21                             1140 Connecticut Avenue, NW
                               Suite 1140
22                             Washington, D.C. 20036
23

24

25
```

Page 2

1   Court Reporter:            Patty Artrip Gels, RMR

                              Official Court Reporter

2                             U.S. District Court

                              333 Constitution Avenue, NW

3                             Washington, D.C. 20001

4   Proceedings reported by machine shorthand, transcript produced

    by computer-aided transcription.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 3

```
1                    P R O C E E D I N G S
2              COURTROOM DEPUTY:  This is United States of America
3    versus Kevin M. Sales, Criminal Case 04-304.
4              Counsel state your appearances for the record,
5    please.
6              MS. CARRINGTON:  Good afternoon, your Honor, Trena
7    Carrington for the United States.
8              THE COURT: Welcome back, Miss Carrington.
9              MR. ONORATO:  Your Honor, Danny Onorato appearing on
10   behalf of Mr. Sales and with me at counsel's table is Michael
11   Starr.
12             THE COURT:  Welcome back, Mr. Onorato.  Welcome, Mr.
13   Starr.  All right.
14             Counsel, I scheduled this hearing to get an update on
15   where we were with the Suppression Hearing.  There were some
16   outstanding issues as to whether or not there was going to be
17   any need for the Government to put on any additional testimony
18   on the issue of whether or not there was in fact a lid on the
19   Wendy's cup in question and whether or not there was anything
20   else that was going to be needed.
21             The Court in the interim has decided upon reviewing
22   the pleadings that there is no need, in order for it to rule,
23   there is no need for it to have any more hearings; and the Court
24   can issue its ruling without the need of any further evidence
25   being taken in the case or any further arguments being made in
```

1    the case.

2         So I am going to go over my ruling here from the

3    bench, and I will reserve the right to submit a formal opinion

4    at a later time, but as of now I am not intending to.

5         In the Motion To Suppress Tangible Evidence and

6    Statements, the Defendant Kevin Sales moves to suppress, one,

7    certain physical evidence seized pursuant to a search of his

8    person and his vehicle following a traffic stop including a

9    plastic bag containing 33.5 grams of a substance that field

10   tested positive for cocaine base, a nine millimeter Ruger

11   handgun containing 16 rounds of ammunition, and a plastic bag

12   containing 3.1 grams of marijuana; and, two, certain statements

13   made by the Defendant at the time of these searches.

14        The Court held hearings on the Defendant's Motion to

15   Suppress on November 5, 2004, and on November 19, 2004.  The

16   Defendant indicated during the November 5 hearing that he did

17   not wish to pursue the challenge to the statements he made on

18   the scene and thus the Court's ruling focuses today on the

19   Defendant's challenge as to the physical evidence seized on that

20   occasion.

21        For the following reasons the Court grants the

22   Defendant's Motion to Suppress the physical evidence seized

23   after the traffic stop in this case.  The facts relevant to the

24   Defendant's Motion are as follows:  On June 1st, 2004, at

25   approximately 11:45 p.m., Officer Michael Johnson of the U.S.

Page 5

1   Park Police spotted the Defendant's silver 1999 Yukon Denali

2   while patrolling in the area of New Hampshire and Missouri

3   Avenues, NE.

4           The Yukon was traveling northbound and passed Officer

5   Johnson in his cruiser as he was headed southbound on Missouri

6   Avenue.  Officer Johnson observed the driver's side window which

7   was approximately six inches down and was heavily tinted.

8   Officer Johnson made a U-turn so that he could initiate a

9   traffic stop for a suspected violation of the tint laws.

10          Officer Johnson stopped the Yukon which was being

11  driven by the Defendant at the intersection of New Hampshire

12  Avenue and Madison Street, NE.  He then made contact with the

13  Defendant and the individual seated in the front passenger seat

14  who he later determined was the Defendant's cousin Victor

15  Hopkins.  Officer John testified that when he began a

16  conversation with the Defendant to request his driver's license

17  and registration, he quote "immediately detected the odor,

18  strong odor of marijuana coming from the passenger compartment

19  of the vehicle," close quote.  Hearing transcript page 11, lines

20  19 to 22.

21          Officer Johnson testified that he had previously had

22  some formal training with regard to the packaging, sale,

23  transportation and distribution of marijuana but not necessarily

24  with regard to the smell of marijuana, in particular, unburnt

25  marijuana.

Page 6

1        He further testified that he had been involved in

2   approximately 100 traffic stops involving suspected odor of

3   marijuana most of which involved burnt marijuana.

4        Officer Johnson then asked the Defendant to exit the

5   vehicle so he could determine if the Defendant had any narcotics

6   on his person.  He also testified that he sometimes asked

7   drivers in elevated vehicles such as SUVs to exit the vehicle

8   for safety purposes while he is using a tint meter on the

9   windows.  Once the Defendant exited the vehicle, Officer Johnson

10   conducted a pat down search of the Defendant.

11        From the Defendant's pants pockets Officer Johnson

12   recovered a package of Blackwood Cigars and $325 of currency.

13   During his search, Officer Johnson also pulled the Defendant's

14   waistband back and searched into the Defendant's genital area.

15   Upon patting him in the Defendant's genital area, Officer

16   Johnson felt a hard bulge between the Defendant's legs and

17   subsequently recovered a plastic bag which held another plastic

18   bag containing numerous large chunks of an off white rock-like

19   substance.

20        The substance was weighed and field tested positive

21   for cocaine base.  The substance weighed 33.5 grams.

22        The Defendant was placed under arrest for possession

23   of this substance, and Officer Johnson and another officer then

24   removed Mr. Hopkins from the Yukon so the vehicle could be

25   searched. Officer Johnson testified that he believed the vehicle

Page 7

1    contained quote, "a large quantity of marijuana, specifically

2    fresh marijuana," close quote.  Hearing transcript page 20,

3    lines five to nine.

4         In searching the vehicle, the officers recovered a

5    nine millimeter Ruger handgun loaded with 16 rounds of

6    ammunition from the driver's seat floorboard area and also a

7    plastic bag containing approximately 3.1 grams of marijuana from

8    a Wendy's soda cup in the center console of the vehicle.  The

9    plastic bag containing the marijuana had been stuffed into the

10   cup which was more than half full of soda.  Hearing transcript

11   page seven and page 88.

12        The marijuana was quote "raw close" quote or fresh and

13   had not been burned.  Although the Defendant testified during

14   the hearing that he believed there was a lid on the cup at the

15   time Officer Johnson approached the vehicle, the Government

16   sought to dispute this fact; and the Court will proceed as if it

17   had been disputed.

18        The Court finds no need to delve further into whether

19   the lid was on or off the Wendy's cup.  Based on the undisputed

20   facts presented at the hearing, the Court finds for the

21   following reasons the Government has not met its burden in

22   demonstrating that Officer Johnson had probable cause to engage

23   in the search of the Defendant's genital area.  Accordingly the

24   plastic bag containing the cocaine base must be suppressed as

25   the fruit of an unlawful search and all evidence seized from the

Page 8

1    Defendant's vehicle must be suppressed because absent a basis to

2    arrest the Defendant there was no probable cause to justify the

3    search of the vehicle.

4            The dispositive issue before the Court is whether

5    Officer Johnson had probable cause to justify the search of the

6    Defendant's person after asking him to exit the vehicle.  There

7    is no question that Officer Johnson properly conducted a traffic

8    stop for a suspected tint violation which is a traffic

9    violation.  United States versus Mitchell 951 Fed Second 1291.

10   See also United States versus Drain 48 Fed Third 562.

11           Once the traffic stop occurred, Officer Johnson could

12   conduct a protective Terry frisk of the Defendant for the

13   limited purpose of safety if he had reason to believe the

14   occupant of the vehicle might be armed.  United States versus

15   Cole 276 Fed Second 146.

16           However, in this case, Officer Johnson failed to

17   articulate any facts suggesting that he believed that the

18   Defendant may have been armed.  Furthermore, the Court finds

19   that even if Officer Johnson had the requisite suspicion that

20   the Defendant might be armed, the pat down of the Defendant went

21   beyond a protective Terry frisk necessary for officer safety.

22   Officer Johnson reached inside the Defendant's waistband and

23   patted his genital area.  To engage in a full search of the

24   Defendant, Officer Johnson must have had probable cause for an

25   arrest.  United States versus Short 570 Fed Second 1051.  D.C.

1    Circuit 1978.

2         The Government's sole basis for probable cause is

3    Officer Johnson's testimony that he smelled the quote "strong

4    odor" close quote of fresh marijuana emanating from the

5    Defendant's vehicle.  November 19 transcript, page 19.

6         However, for several reasons the Court finds that the

7    officer's testimony was not sufficiently credible to support a

8    finding of probable cause to search the Defendant.  See Anderson

9    versus City of Bessemer City 470 U.S. 564.

10        First, the Court simply does not find it plausible

11   that the officer could have detected a quote "strong odor" close

12   quote coming from a nominal amount of raw marijuana which was

13   contained in a plastic bag and then either partially or fully

14   submerged in a cup of soda in the center console.  Whether or

15   not there was a lid on the Wendy's cup, the Court finds this

16   testimony incredible.

17        Second, the Court finds that there were several

18   aspects of the officer's testimony that suggested exaggeration

19   and thus diminished his credibility as a witness in this case.

20   For instance, when questioned on Cross-Examination with regard

21   to the alleged strong odor coming from a relatively small amount

22   of marijuana, Officer Johnson testified that the marijuana was

23   not quote "the regular street marijuana" close clothe.  Rather,

24   it was a stronger hybrid.  Hearing transcript pages 55 and 56.

25        However, neither the police reports nor the officer's

1   estimate of the cost of the marijuana seized recorded at the

2   time of the search were consistent with this recollection.  In

3   addition, although the officer testified that he had little

4   experience with traffic cases involving fresh marijuana and also

5   did not have formal training with regard to smelling fresh

6   marijuana, he adamantly and repeatedly testified that he

7   believed that the distinct odor coming from the vehicle was a

8   quote "large amount of fresh marijuana" close quote.

9           The Court finds that based on this officer's testimony

10  alone, the Government has not met its burden in demonstrating

11  probable cause to search the Defendant's person.

12          With regard to probable cause for search of the

13  vehicle, as the Court has found that the Government has failed

14  to prove probable cause for the search of the Defendant's

15  person, the subsequent search of the vehicle cannot be upheld as

16  a search incident to a lawful arrest or an inventory search.

17  Accordingly, to justify the officer's warrantless search of the

18  Yukon following the arrest of the Defendant, the Government must

19  show that Officer Johnson had probable cause to believe the

20  vehicle contained contraband.  Carol versus United States 267

21  U.S. 132.  United States versus Turner, 119 Fed Third, 18.

22  United States versus Garrett, 959 Fed Second 1005.

23          Unlike Turner in which the D.C. Circuit upheld the

24  search of a vehicle trunk where the police smelled the strong

25  odor of burnt marijuana and saw pieces of cigar paper and a

1    plastic bag of green weed like material around the driver of the

2    vehicle, in this case apart from the fruits of his unlawful

3    search of the Defendant, Officer Johnson had no basis to search

4    the Yukon except for the alleged odor of marijuana about which

5    the Court has already expressed its doubts.

6              Accordingly, the Court also finds that the Government

7    has not set forth sufficient basis for the search of the Yukon

8    and all evidence seized from the vehicle shall also be

9    suppressed.

10             The Court thus grants the Defendant's Motion To

11   Suppress Tangible Evidence.

12             Any questions, counsel?

13             MS. CARRINGTON:  Not from the Government, your Honor.

14             THE COURT:  Okay.

15             MR. ONORATO:  Not on behalf of the Defendant, your

16   Honor.

17             THE COURT:  All right. Will the Government be moving

18   to dismiss the case against the Defendant?

19             MS. CARRINGTON:  No at this time, your Honor.

20             THE COURT:  Okay.  Will the defense be filing a Motion

21   To Dismiss the case?

22             MR. ONORATO:  We will, your Honor.

23             THE COURT:  All right.  I will expect to get your

24   Motion.  I don't know what frankly is left in the case with all

25   this evidence gone.  I frankly can't think of anything that's

Page 12

1    left, but I will leave that to counsel to figure that out.   And

2    obviously you will have -- what do you need?   A week, ten days?

3            MR. ONORATO:   Your Honor, we will move it as rapidly

4    as possible.

5            THE COURT:   Fine. The Government will have the

6    standard amount of time to respond.

7            MS. CARRINGTON:   Your Honor, I believe that we are --

8    I believe it is 30 days for the office to make the determination

9    whether they want to appeal the Court's ruling and so we would

10   ask for 30 days.

11           THE COURT:   Well, I am talking about now the Motion To

12   Dismiss the case, not -- I mean you are appealing my ruling --

13   you are appealing not the ruling as much as you are appealing

14   the dismissal of the case based upon the ruling.

15           MS. CARRINGTON:   It may be, and it has been in certain

16   instances where if the office is not going to proceed any

17   further, we would file a Motion To Dismiss without any

18   necessity, but that needs to be determined.   That's a

19   determination I cannot make today in court and so even if -- I

20   would just ask for 30 days because that's procedurally the way I

21   understand we proceed from this point.

22           I haven't -- I don't have any other representations

23   other than that.

24           THE COURT:   All right.   Mr. Onorato.

25           MR. ONORATO:   I understand Miss Carrington's point

Page 13

1    that she wishes to consult with the supervisors and determine

2    whether they will take an appeal.  I don't see why the Court

3    should not set a Status Hearing 30 days from today and, in the

4    interim, if we feel it is necessary to file a Motion To Dismiss,

5    we will do so.

6              There is no -- and if the Court grants it before then,

7    then there is no need to come back in for the status.

8              THE COURT:  All right.  Well, unfortunately 30 days

9    from today is January 2 I think, which may be a weekend.

10             MR. ONORATO:  I think the third is the --

11             THE COURT:  Excuse me.  Today is the first so it would

12   be New Year's Day.  Mr. Burwell, take a look at your calendar.

13   We will look at the first week in January.

14             MR. ONORATO:  Yes, sir.

15             COURTROOM DEPUTY:  We start a trial on Tuesday.  We

16   can set it in the afternoon on Wednesday, Thursday, the 5th or

17   6th because we will be in trial.

18             THE COURT:  Okay.  What day is that?

19             COURTROOM DEPUTY:  The 6th is a Thursday and I don't

20   see anything Friday the 7th.

21             THE COURT:  So Wednesday, is there a trial that week?

22             COURTROOM DEPUTY:  Yes.

23             THE COURT:  What day is the trial?

24             COURTROOM DEPUTY:  Tuesday, Wednesday and Thursday.

25             THE COURT:  How about Friday then? So Friday, the 7th?

Page 14

1           COURTROOM DEPUTY:  Friday is the 7th.

2           THE COURT:  How about January 7, counsel?

3           MR. ONORATO:  That will be fine, your Honor.

4           MS. CARRINGTON:  That's a good date, your Honor.

5           THE COURT:  All right.  11:00 a.m. So in the meantime,

6   you go ahead with whatever you are going to do, Mr. Onorato.

7           MR. ONORATO:  Yes, sir.

8           THE COURT:  The Government can have the standard

9   amount of time to respond.  I will take a look at those.

10          MR. ONORATO:  Yes, your Honor.

11          THE COURT:  I am not quite sure I understand and I am

12  not quite sure Miss Carrington understands all the things she

13  needs to do, but the Court is willing to give the Government a

14  chance to rethink its situation and you can file whatever Motion

15  you need to file; and we will wait and see what response we get

16  in the interim, but it would seem to me at this point the

17  practical reality is there is no case left.

18          Now, in the interim, Mr. Onorato, I have been pleased

19  to see that your client has scrupulously complied with all the

20  terms and conditions of his release.  It behooves you to impress

21  upon him that he is to not only to continue to do that, that he

22  double his efforts to do it, because if there is any violation

23  however small we will be having a hearing and, as you know, you

24  have heard me say this as he has heard me say it, it could be

25  the grounds for him being stepped back immediately.

Page 15

1            MR. ONORATO:  Yes, sir.  I didn't hear the Court

2   modify any conditions of release that Mr. Sales is under so Mr.

3   Sales I think understands fully well.

4            THE COURT:  I am not modifying anything.  We will keep

5   the status quo and keep batting a thousand and everything is

6   going to be just fine.  But make sure he appreciates it.

7            MR. ONORATO:  I will.

8            THE COURT:  I don't want to snatch defeat from the

9   jaws of victory.

10            MR. ONORATO:  Understood, your Honor.

11            THE COURT:  All right.  Miss Carrington, anything

12   else?

13            MS. CARRINGTON:  Nothing further, your Honor.

14            THE COURT:  Very good.  We will stand in recess.

15            (Whereupon, at 4:03 p.m., the proceedings were

16   concluded.)

17

18

19

20

21

22

23

24

25

Page 16

1                    CERTIFICATE OF REPORTER

2

3           I certify that the foregoing is a correct transcript

4    from the record of proceedings in the above-entitled matter.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25