**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| | ) | |
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Crim. No. 06-221 (EGS)** |
| | ) | |
| **JAMES L. MCNEAL,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**DEFENDANT JAMES MCNEAL'S SECOND NOTICE OF RELEVANT AUTHORITY**

Mr. James L. McNeal, the defendant, through undersigned counsel, respectfully submits

this Second Notice of Relevant Authority.  As a supplement to Mr. McNeal's Motion to

Suppress, undersigned counsel respectfully calls to this Court's attention the following empirical

study:  Richard L. Doty, Thomas Wudarski, David A. Marshall, and Lloyd Hastings,"Marijuana

Odor and Perception: Studies Modeled From Probable Cause Cases," Law and Human Behavior,

Vol. 28, No. 2, April 2004 ("Study").  The authors of the Study are four professors at the

University of Pennsylvania School of Medicine.

In the Study, the authors state that they undertook the study because while "law

enforcement officers routinely rely solely on the sense of smell to justify probable cause when

entering vehicles and dwellings to search for illicit drugs, the accuracy of their perception in this

regard has rarely been questioned and, to our knowledge, never tested." Id. at 223.  The Study

states that it "arose from the need to better understand the nature of marijuana's odor and

whether humans can discern this odor in situations modeled from 'real life' law enforcement

encounters." Id. at 224.

The Study involved two experiments:  (1) whether a group of nine people (five men and

four women) could truly detect processed marijuana within an automobile trunk from the

passenger compartment of the automobile; and (2) whether the group could truly detect odors

from a marijuana "grow house" from a distance of several hundred yards away.  Id.

In the first experiment, which is more relevant to the present case, the nine people were

exposed to a garbage bag containing five pounds of marijuana.  They were also asked to smell a

similarly heavy bag containing just newspapers.  All nine reported that they could smell the

marijuana when exposed directly to the bag.  None reported that they smelled marijuana when

smelling the newspapers directly.

In the next phase, the five pound bag of marijuana and the bag of newspapers were then

alternately placed into the trunk of a car.  Id. at 226.  The car was driven around for 20 minutes

and then parked for ten minutes, with the heater on and the door shut.  The nine participants, who

were now familiar with the smell of marijuana from the first phase, were then asked to stand by

the driver's side door.  The following instructions were given:  "When the driver gets out, sniff in

the front seat area, and in the back seat area, and tell me if you smell the odor of marijuana.  Tell

me your response, yes or no, after you have finished sampling and the driver has gotten"  Id.

The result of the trial was the same number of false positives for marijuana as actual

positives.  Id. at 231.  In other words, the individuals smelled marijuana as often when it was not

present as when it was present.  As reported, "when the marijuana-containing garbage bag was

placed in the trunk of an automobile under conditions analogous to those present in an actual

search and seizure operation, there was no convincing evidence that marijuana odor could be

discerned."  Id.  In words directly relevant to the instant case, the Study also notes that:

"Importantly, one must not overlook the fact that expectation or suggestion can often dictate the

likelihood of a person believing that they smell an odor . . ."  Id. at 232.

Overall, the Study concludes that its findings "suggest that a blanket acceptance of testimony based upon reported detection of odors for probable cause is questionable and that empirical data to support or refute such testimony in specific cases is sorely needed."  Id.

* * *

The attached Study is relevant to the present case in several respects.  First, the Study generally reports that an individual's ability to detect the smell of marijuana–even an individual who is quite familiar with that smell–is in fact very low.  Thus, the study gives very good reason to believe that Officer Watson did not smell any marijuana in the first instance when standing adjacent to Mr. McNeil's car.

Secondly, the Study reports on the role that the "expectation or suggestion" of a marijuana smell can have in creating "the likelihood of a person believing that they smell an odor" that they do not.  Thus, even if Officer Watson may have thought he smelled marijuana, the lack of any significant marijuana in defendant's car, when combined with the results of the Study, strongly supports the view that such a smell was not in fact present.  Indeed, both the defendant's expert witness (David Leff) and the government's expert witness (Detective Washington) agreed that the minuscule amount of marijuana recovered from Mr. McNeil's vehicle could not have generated an odor detectable by Officer Watson.

WHEREFORE, Mr. McNeal respectfully submits the above Notice of Relevant Authority

in connection with his Motion to Suppress.


Respectfully submitted,


_____/s/_____
Jonathan S. Jeffress
Assistant Federal Public Defender
625 Indiana Avenue, N.W.
Suite 550
Washington, D.C.  20004

(202) 208-7500, ex. 134